ELI THAYER ADS. SAMUEL W. TORREY.

37   339
48e  227

1. The certificate of acknowledgment of a married woman to a deed need not state that there was a private examination, if it certify that she was examined separate and apart from her husband. This is a substantial compliance with the statute; a verbal compliance is not required.

2. Where there is an agreement to sell lands, charged with a mortgage of a certain amount, and two deeds are drawn, conveying the lands named in the agreement in different parcels, each of which charges the land therein described with a mortgage of the amount named in the agreement, but does not, in terms, refer to the other deed; the mortgage, the fact that it is the only mortgage, and the location of the lands, may be shown in explanation.

3. Where the amount of the mortgage is by contract, to be paid as part of the purchase money, it is an assumption of payment between the grantor and the grantee, and not merely a taking subject to the mortgage.

4. Where there is a description in a deed, followed by an exception which is uncertain, the exception may be void for uncertainty, but the description will stand.

5. Where it was necessary for one party to foreclose a mortgage on land, taken in exchange to perfect a title which was to be conveyed free of encumbrances, the expenses of foreclosure must be paid by the other.

6. If the buyer goes into possession of land under the agreement to purchase, where some of the payments are deferred and the title papers remain in *escrow* until the payments are made, after an occupation of four years, knowledge that the papers are in *escrow* and payment of part of the purchase money, without objection, all formal exceptions to the execution of the papers are waived.

7. Where the agreement for sale does not call for covenants in the deeds, the vendee is only entitled to good and sufficient deeds to convey the title in fee simple, without covenants.

This was an action of *assumpsit*, brought by Samuel W. Torrey, plaintiff, against Eli Thayer, defendant, in the Monmouth County Circuit Court, October Term, 1873, on a contract in writing between the parties, dated November 8th, 1869.

By this contract Torrey agreed to sell and convey all the real estate owned by him at Port Monmouth, Monmouth county, bought of the Seabrook heirs and W. V. Wilson;

also, one hundred and eighty shares of $100 each, being the entire capital stock of the Port Monmouth Association, (said real estate being subject to a mortgage for $2080,) for the sum of $16,080, payable as follows: $2080 in said mortgage; $3000 in cash, December 1st, 1870; $3000 in cash, April 26th, 1870; $3000, November 1st, 1870; $5000 in a house and lot at Red Bank; the title to which was in the name of Thayer's wife, and was to be conveyed free and clear of all encumbrances.

Two mortgages upon the Red Bank house and lot were held or controlled by Thayer, and these were to be assigned. Torrey was to foreclose them, and thus perfect title to said property, which title was warranted by Thayer.

It was also agreed that Torrey should place in the hands of William V. Wilson, good and sufficient deeds of his property at Port Monmouth; also, the certificate for one hundred and eighty shares of said stock, with sufficient powers of attorney therewith, to be held by him in *escrow* to be delivered to Thayer when all of the above payments were made.

Thayer was to have the use of the property, and pay interest at seven per cent. on above deferred payments.

Thayer has been in possession of the property at Port Monmouth since the execution of the agreement. Torrey received of Thayer the first payment of $3000, and foreclosed the mortgages by which he obtained title for the house and lot at Red Bank upon payment of $233.50, the expenses of the foreclosure. Torrey delivered to W. V. Wilson two deeds of conveyance, including all his land at Port Monmouth, called for by the agreement, and certificates with powers of attorney for one hundred and eighty shares of stock of the Port Monmouth Association, being all the stock of that association.

Thayer refused to make the remaining payments, and to pay the expenses of foreclosure, and this action was brought.

The verdict was for the plaintiff—$7887.99—which was the whole balance claimed, and interest, including, also, the

expenses of the foreclosure suit, and interest from the time of payment.

On motion to non-suit the plaintiff and refusal, exceptions were prayed and allowed.

The bill of exceptions was afterwards waived, and a rule to show cause why a new trial should not be granted was allowed. A state of the case was settled, and the points of exception certified for the advisory opinion of this court.

Argued at November Term, 1874, before BEASLEY, Chief Justice, and Justices DEPUE, DALRIMPLE, and SCUDDER.

For the plaintiff, *B. C. Chetwood.*

For the defendant, *J. S. Applegate.*

The opinion of the court was delivered by

SCUDDER, J. The first point certified is, whether the certificates of acknowledgment in the two deeds of conveyance from Samuel W. Torrey and wife, to Eli Thayer, are sufficient to bar the right of dower of the wife of the grantor.

These acknowledgments state that she was examined separate and apart from her husband.

The act respecting conveyances, (*Nix. Dig.* 145, § 4,) requires that the acknowledgment of conveyances made by a married woman shall be "on a private examination apart from her husband."

Since the case of *Den* v. *Geiger*, 4 *Halst.* 225, it has been received as the true construction of this section, and of the first section of this act, that a certificate of acknowledgment of a deed is good if it shows a substantial, though not a verbal compliance with the act.

In that case there was the same omission in the certificate, that there was a *private* examination.

It was insisted that the examination must not only be apart from the husband, but apart from all other persons.

But it was answered that as the object of the statute was to

protect the wife from the undue influence and control of her husband, it was sufficient if it appeared that the examination was apart from him, and that it did so appear when the officer certified she was examined separate and apart from her husband, without saying that it was a private examination.

The words used in the acknowledgments are equivalent to those given in the statute, and the omission to state that the examination was private was not a good ground for refusing to accept the deeds under the agreement between the parties.

The mischiefs that would result to titles from any other construction of this statute are fully described in the case of Den v. Geiger, and these are not lessened by a consideration of the number and qualifications of the officers who have since been authorized to take acknowledgments of deeds.

The next point is, that the two separate deeds of conveyance executed by the plaintiff and wife, to the defendant, are each made subject to a mortgage for $2080; whereas, by the agreement the real estate was to be subject to one mortgage for that amount.

But one of these deeds recites that the mortgage is upon the lands therein described, and the adjoining premises. It appears in the evidence locating the property, that the adjoining premises are those described in the other deed to the defendant. It was also shown that there was in fact but one mortgage overlapping and covering both parcels of land described in the separate deeds.

These deeds being executed at the same time, between the same parties, and relating to the same subject matter, to wit, the conveyance of all the lands of the plaintiff at Port Monmouth, should be construed together as parts of the same transaction.

These deeds do not in terms refer to each other, and state that it is the same mortgage which is mentioned in each, but the mortgage named in each, by the amount, is thereby made a part of each deed, and upon its production shows that it

includes the lands described in both deeds, and is the same mortgage for $2080.

This evidence is competent and complete. 2 *Phillips' Ev.* 738, &c.

The terms of the agreement are, therefore, fulfilled in this respect, for the payment of the sum of $2080, named as part of the consideration for the lands, secured by mortgage, will discharge all the lands named in the deeds from the lien of the mortgage.

The apparent error has been caused by making two deeds with parts of the same land in each, instead of conveying all the lands in one deed.

It is also objected that in one of the deeds it is written that the mortgage for $2080 is assumed to be paid by the party of the second part as a part of the consideration money of the deed, and that this binds the defendant personally for the payment, as if his name was signed to the deed; whereas, the agreement is, that the land shall be taken subject to the mortgage, without personal obligation to pay the amount of the mortgage.

The difference is important if the defendant's construction of the agreement be correct.

This contract, however, stipulates that, "said real estate being subject to a mortgage for $2080," the consideration of $16,080 *shall be payable* as follows: "$2080 in said mortgage," &c.

The mortgage, therefore, is to be paid as part of the consideration, and the land is not merely taken subject to the mortgage. It is in effect an assumption to pay the mortgage in discharge of the vendor's liability to pay. Instead of paying him the entire consideration money, out of which the mortgage may be paid, so much of the consideration as may be needful is appropriated by the parties for that purpose. The mortgage is charged upon the purchase money, and not upon the land only, by the agreement, and it is rightly so stated in the deed. *Tichenor* v. *Dodd,* 3 *Green's Ch. R.* 454; 1

*Hilliard on Mortgages* 329; *Russel* v. *Pistor*, 3 *Seld.* 171; *Belmont* v. *Coman*, 22 *N. Y.* 438.

The next point is, that in deed number two there is conveyed no certain estate, said deed containing a reservation, or exception, which may cover all the land granted.

This objection can refer to only a part of the lands included in this deed, which parcel is described as follows:

"Also a strip or piece of land, one hundred feet wide, being fifty feet wide on each side of a line now staked out for a railroad, extending from the east side of said plank road (curving to the right about five hundred and fifty feet) to the south side of said Seabrook avenue; *excepting and reserving out of said strip, or piece, so much land as not belonging to the said parties of the first part.*"

The expression would have been more accurate if the exception had referred to the right the railroad company had acquired in the strip or piece of land, and the description had been, "all the right, title and interest of the grantor in said strip and piece."

But such is the obvious intent of the description and exception. It is awkwardly expressed, but means that the strip of land staked out by the railroad company is conveyed, excepting the burden imposed by the survey and location of the route of the railway on such land.

The former part of the description is certain, and if there be uncertainty, it is in the exception.

This may avoid the exception, because of the uncertainty, but will avail to convey all the title which the grantor has in the strip of land described. *Shep. Touch.* 78; 4 *Kent's Com.* *468.

The grantee, by the agreement, was to receive all the real estate owned by the grantor at Port Monmouth, and he conveys all he owns of this strip by the clause above quoted.

The next point certified is, whether the defendant is legally bound to pay the costs of foreclosure, by which the house and lot of land in Red Bank, the title to which was in the name

of Mrs. Thayer, was conveyed to the plaintiff. There can be no doubt about this.

By the contract the plaintiff agreed "to take, as the final payment, say $5000, the house and lot in Red Bank, Monmouth county, New Jersey, owned by said Thayer, but the title to which now stands in the name of Mary D. Thayer, the said house and lot to be free and clear of all encumbrances."

There were two mortgages upon this property, which were transferred to the plaintiff under the contract; these the plaintiff was to foreclose, and thus perfect the title to the property, which Torrey was to have free and clear of all encumbrances.

In order to free the property, and make such title as Thayer was bound to give, it was necessary, or most convenient, to foreclose these mortgages, and to this Thayer assented. Torrey really acted in this matter as Thayer's agent to make him perform his contract, and the legal expenses of foreclosure are properly chargeable to Thayer.

But the defendant was not in a position to refuse payment of the purchase money, for he knew that all the papers were put in the hands of Wilson in *escrow;* he made payment of a considerable part of the purchase money after such deposit; he has been in possession of the lands since the date of the agreement, and still holds possession.

So far as appears in the case, he made no objection to the papers put in *escrow* until this suit was brought, when these formal objections were first made. His conduct, after the long time that has elapsed since he entered into possession, must be held to be a waiver of all formal exceptions to the title put in the hands of the depositary.

He has been in possession, receiving the benefit of the lands for four years, and it is too late for him to object and refuse to pay the purchase money. *Sugd. V. & P., Vol. I, ch.* 8, § 20, &c.

The objection that the deeds do not contain full covenants is not tenable, for the agreement does not call for such covenants.

He is only entitled, by its terms, to good and sufficient deeds to convey the title in fee simple. It has been so decided, recently, in the Court of Errors and Appeals. *Lounsbery* v. *Locander*, 10 *C. E. Green* 554.

Upon all the points certified, the Circuit Court is advised that there is no cause shown for a new trial.