WILLIAM J. LONGLEY

*v.*

WILLIAM M. SPERRY and EDWARD GRAU.

[Decided May 15th, 1907.]

1. Plaintiff and B. purchased a livery stable in common, executing a chattel mortgage to the seller to secure their several notes for a part of the price, each being an endorser for the other. Plaintiff paid off his note, but while the other was outstanding B. applied to S. for a loan, and on being asked if he was the individual owner of the property replied that he was, "as the interest of another party therein had been paid off," without mentioning the name of the person otherwise interested, and also stated that there was a chattel mortgage on the property held by the original vendor to secure $500 which was subsequently paid with a part of the money borrowed from S.—*Held* sufficient to charge S. with notice of plaintiff's interest in the property.

2. Plaintiff and B. having purchased a livery business, mortgaged the property to secure their several notes given for part of the price, on which each was endorser for the other. Plaintiff paid his note, and thereafter B., having wrongfully obtained possession of the mortgage, borrowed more

money from S., giving a chattel mortgage on the property with which he paid his note to a bank which had discounted it, and also executing an assignment of the vendor's original mortgage to S. B. then applied to plaintiff, offering to purchase his interest, producing to him the original chattel mortgage with the seals torn off, and the note stamped "paid" by the bank, whereupon plaintiff sold his interest to B., taking a chattel mortgage for a part of the price without knowledge of the assignment.—*Held*, that the assignment of the mortgage without the transfer of the unpaid note secured thereby conferred no rights on the assignee as against plaintiff.

3. The fact that the note and mortgage were presented by B. to plaintiff, the one with the seal torn off, and the other marked "paid" two months before its maturity, was insufficient to put plaintiff on inquiry, or excite suspicion that the note and mortgage had been stolen.

4. *P. L. 1902 p. 489 § 8*, providing that chattel mortgages duly recorded shall be valid against creditors of mortgagors and against subsequent purchasers, and mortgagees from the time of recording until the mortgages are canceled of record, was ineffective to validate, as against a subsequent mortgagee in good faith, a prior mortgage which had been in fact paid but which was not canceled of record.

5. *P. L. 1902 p. 488 § 6*, relating to chattel mortgages, provides that no chattel mortgage shall be recorded until its execution shall be first acknowledged or proved and certified in the manner required by the act respecting conveyances, which (*P. L. 1898 p. 678 § 22*) provides that the officer having first made known the contents of the instrument to the party making the acknowledgment and being satisfied that such party is the grantor, &c., shall make a certificate on, under or annexed to the deed or instrument.—*Held*, that where the certificate of acknowledgment to certain chattel mortgage assignments did not state that the contents of the assignments had been made known to the party acknowledging the execution thereof, the acknowledgments were fatally defective.

6. The record of chattel mortgage assignments not properly acknowledged, and, therefore, not entitled to record, did not operate as constructive notice to a subsequent mortgagee.

7. The rule that a chattel mortgage may be kept alive notwithstanding payment in order to secure another creditor of the mortgagor as against subsequent encumbrances or purchasers is inapplicable where the attempt to keep the mortgage alive has been made by only one of the mortgagors having only a third interest in the mortgaged chattels for the purpose of defrauding his co-owner.

8. Where an assignee of a mortgage permitted the note which it was given to secure to come into the hands of the mortgagor with evidence on its face that it had been paid and did not secure possession of the mortgage itself, which the mortgagor thereafter used to induce the belief on the part of his partner and subsequent mortgagee that the note had been paid, such assignee was not entitled to claim that the mortgage should be kept alive to secure money which he loaned to take up the note secured by the mortgage.

9. Where one of the members of a firm engaged in operating a livery stable mortgaged the entire assets of the firm to raise money which he converted to his own use, such mortgage was only effective to create a lien on the mortgaging partner's interest in the firm after an accounting.

10. Where a chattel mortgage was properly executed, acknowledged and recorded, it operated as notice to a subsequent mortgagee under the express provisions of *P. L. 1898 p. 690 § 53.*

On final hearing on bill, answer and proofs:

*Mr. Berkeley C. Austin,* for the complainant.

*Mr. William D. Wolfskiel,* for the defendant Sperry.

PITNEY, ADVISORY MASTER.

The contest in this cause is over a sum of money in the hands of the court, which is the proceeds of the sale, by consent of the parties and the order of the court, of certain chattels constituting a livery stable plant known as the Golf Stables, situate at Cranford, New Jersey.

The question involved is, Which of two innocent parties— Longley and Sperry—shall suffer by the manifest fraud of a third party?

Both parties claim under chattel mortgages, and the question is one of priority, depending upon the effect of certain facts and circumstances in the cause. The facts are as follows:

In the last days of July, 1905, one James Z. Smith was the owner in possession of the chattels in question, and all parties claim through him.

On the 29th day of July, 1905, he conveyed the stable and contents and the lease of the realty to the complainant, Longley, and to one William E. Brock (who is the fraud-doer in the case), jointly, for the sum of $3,000. Of this sum, $2,000 was paid in cash, $1,500 being paid by Longley and $500 by Brock, and for the balance of $1,000 they delivered to Smith their several promissory notes for $500 each, one made by Longley, endorsed by Brock, payable six months after date, and one made by Brock, endorsed by Longley, payable twelve months after date.

Mr. Austin, a lawyer practicing at Cranford, seems to have attended to this matter professionally, and he swears that he promptly lodged the mortgage for record, and it so appears, and that it was duly returned to him from the office of the register, and that he mailed it immediately to Mr. Smith at Cranford. Mr. Smith swears that immediately after the sale, and while Brock was in possession managing the business for himself and Longley, his, Smith's mail, continued to be delivered at the stable. The fair inference from all the evidence, and this is Mr. Smith's theory, is that this mortgage was delivered from the post-office to the livery stable and there taken and kept by Brock. It is certain that it never came to the hands of Mr. Smith, and was next seen in the hands of Brock under circumstances presently to be stated.

Mr. Longley left the management of the business at the livery stable mainly, if not entirely, to Brock, but the bill and letter-heads of the concern were printed and the bills made out in the name of William E. Brock & Company.

Mr. Longley paid his note at maturity, which made him the owner of two-thirds interest in the plant.

Mr. Smith procured the note of Brock, with Smith's endorsement in addition to that of Longley, to be discounted at the Cranford bank.

Some time shortly before the 1st of June, 1906 (two months before maturity of Brock's note), Brock applied to the defendant Sperry (who was engaged in business in New York City, but seems to have lived and been acquainted in Cranford) for a loan of $2,250 to be secured by a chattel mortgage on the stable. Sperry seems from his carefully prepared *ex parte* affidavit (received in evidence by consent without cross-examination) to have been satisfied to loan that amount, and for the purpose of carrying the affair through employed his regular New York attorney, Mr. John Hall Jones, with an office at No. 320 Broadway. Sperry learned from Brock that Smith held a chattel mortgage on the premises to secure $500 and instructed Jones to procure an assignment of that mortgage. Jones thereupon communicated by telephone with Smith and arranged with him for a meeting on June 4th at Jones' office. On that day Sperry,

Smith and Brock met in Jones' office, and it then appeared and was stated that the original mortgage could not be produced, and that the $500 note of Brock was held by the Cranford bank. Sperry thereupon drew his check for $525.33—the amount of the note with interest—to the order of the bank, and another check for $1,724.67 (the balance of the $2,250 to be loaned) to the order of Brock and delivered the same to a Mr. Nolan, apparently an attorney, but who was called in the case assistant to Mr. Jones, and whom I will call his clerk, with instructions that the same were to be delivered upon receiving from Mr. Smith an assignment of his mortgage and upon the execution by Brock of a chattel mortgage to Sperry. Mr. Jones caused to be prepared and executed by Smith an assignment of Smith's mortgage in which it is erroneously described as a mortgage dated August 1st, 1905, and made by Brock alone without stating the name of the mortgagee, and that assignment was executed on the same 4th day of June before Jones as a notary, and recorded that same afternoon.

On the same afternoon—according to Sperry's theory of the facts—Nolan, Brock and Smith proceeded to the bank at Cranford, and there Nolan handed the $525.33 check to the proper officer of the bank, who produced Brock's note, endorsed by Longley and Smith, accepted the check, stamped the note paid, and handed it to Brock, the maker, and thereupon Smith delivered his assignment to Nolan, who caused the same to be recorded promptly.

The error in the description in Smith's assignment being detected—just when does not directly appear—a new assignment was prepared in Jones' office, executed, dated and recorded on the 5th day of June, wherein the mortgage was properly described, both as to date and the names of the mortgagors, Longley and Brock.

On the same 4th day of June Brock executed a chattel mortgage, prepared by Jones, to secure the whole sum of $2,250, to which is annexed an affidavit made by Brock, the mortgagor, and not by Sperry, the mortgagee, stating that the true consideration was a loan of $2,250, and that mortgage was acknowledged on the same day before Mr. Jones as a notary public, and was

recorded on the same day, and the check of Sperry for $1,724.67 was duly delivered to Mr. Brock and paid on that day by the bank.

Mr. Jones, on being informed that the original note of Brock had been handed to Brock and kept by him, required and received from Brock a substituted note for $500 to the order of Sperry, and due on August 1st, 1906, with interest from August 1st, 1905. Jones also prepared and required Brock to sign a statement under date of June 6th, 1906, that he, Brock, had destroyed the $500 note and also the chattel mortgage given to secure it.

The foregoing facts are abstracted from the several affidavits of Sperry, Jones, Smith and Nolan, carefully prepared for use in contesting a motion by complainant for *interim* restraint against Sperry pending suit, and admitted in evidence by consent without cross-examination.

In this condition of affairs, on the 9th day of June, Brock proposed to Longley, who resided in Elizabeth, to purchase out his, Longley's, interest in the stable, and in that connection produced and showed to him the chattel mortgage given by the two to Smith, duly canceled by tearing off the seals, and the promissory note made by Brock and endorsed by Longley duly stamped paid by the bank. The chattel mortgage did not bear any evidence of having been satisfied of record.

A week later, on the 16th day of June, Longley and Brock concluded the contract of purchase and sale. Longley gave Brock a bill of sale and Brock gave Longley his note at one year for $2,328.04 and a chattel mortgage covering the stable and having annexed an affidavit by Longley describing the note and stating that the note was executed and delivered for property purchased. The note and mortgage were dated back to June 1st in order to render it more easy to settle the partnership accounts between hem.

Mr. Longley testified, and is not contradicted therein, that he had no notice of any facts or circumstances which could lead him to suspect, and he did not in fact suspect, that the Smith mortgage and note were paid by anybody but Brock, or that the

mortgage had been assigned to anybody by Smith, or that Brock had executed any other mortgage to any other person.

On the other hand, Mr. Sperry swears that he had no notice that Longley had any interest in the business or in the stable. But not only was he a customer of the stable, whose bill-heads were printed William E. Brock & Company, but his affidavit before referred to contains a clause which is significant. It is as follows:

"Throughout this transaction deponent verily believed that said Brock was the individual owner of the chattels described in said mortgage, and that the same were free and clear from all encumbrances except the lien of $500 held by said Smith, and had no information to the contrary until after the 18th day of June, 1906, deponent having been informed by said Brock that a claim formerly held by said Longley had been paid off. Deponent acted in entire good faith throughout the entire transaction, desiring to help said Brock and making the loan as an accommodation to him."

The witness here undoubtedly refers to the circumstance that shortly after Longley sold to Brock the latter in turn sold to Grau and absconded with some of the chattels conveyed. Sperry's information from Brock as to the state of the title of the goods was obtained in connection with the negotiation for his loan to Brock. Moreover, the *ex parte* affidavit of Jones, the attorney of Sperry, states that on the 1st day of June Sperry brought Brock to him and gave him instructions to prepare the necessary papers for a loan upon the Golf Stables. The affidavit then proceeds:

"Deponent asked said Brock if he was the individual owner of the goods and chattels in said Golf Stables and whether there was any encumbrance upon them. Said Brock replied that he was the owner thereof, *as the interest of another party therein had been paid off*, without mentioning the name of such other party, and that there was a chattel mortgage upon said property held by James Z. Smith to secure the payment of $500."

Then the affidavit proceeds to state the negotiations with Smith.

Here I find distinct notice to Sperry that Longley had previously had an interest in the property, and direct notice to his

attorney employed by him to transact the business that some other party did have an interest, but that he had been paid off.

On this point of previous notice to Sperry of Longley's interest there is another little piece of evidence furnished by the exhibits on the part of Sperry which was not noticed by counsel in argument, and which is not consonant with the order of events which I have previously given. Two checks, as we have seen, were drawn by Sperry, both dated June 4th, 1906, on the Cranford National Bank; one for $1,724.67 in favor of Brock, and one for $525.33 in favor of the bank. Now, the theory of Sperry's counsel is that the check to the order of the bank was presented and accepted by the bank, and the promissory note for $500 delivered over to Brock on June 4th, and that the mistake in the description of the mortgage found in the first assignment was not discovered until the next day, June 5th, when a new assignment was prepared. Now, the chattel mortgage from Brock to Sperry was filed for record on June 4th at twenty-nine minutes after three in the afternoon, and the first assignment from Smith to Sperry was lodged for record on the same day at twenty-eight minutes after three.

Now, the larger check to Brock's order was stamped "paid" by the bank June 4th, 1906. Hence we may fairly infer from all the depositions that the check to Brock was not delivered to him until the chattel mortgage was lodged for record, so that he had time, after the recording of the mortgage, to get from Elizabeth to Cranford before the bank closed for business, and if Brock could get to the bank so could the clerk, Nolan. But the smaller check given to pay the note in the bank is stamped as having been paid on June 5th, a day later.

Now, the clerk, Nolan, fails in his affidavit to state or give the date or hour for any of these transactions. He simply says that he carried out his instructions from Mr. Jones as to the giving of the check to the bank in payment of Brock's note, and neglected to get possession of the note itself.

Jones swears that on June 4th an appointment was made to close the transactions at the Cranford bank on the afternoon of that day, but he says that on the 5th of June he sent Nolan over to the register's office at Elizabeth to verify the description of

the assignment in the mortgage, and Nolan found the description incorrect; that he, Jones, then prepared another assignment, and procured the execution of it by Smith and its record.

A careful examination of these carefully-prepared affidavits on the part of Sperry fail to state, except by inference, just when it was discovered that the description in the first assignment by Smith to Sperry of the Longley-Brock mortgage was erroneous. Now, if we ask why the smaller check given to the bank directly was not stamped "paid" at the same time that the larger check was so stamped, we find the answer in the circumstance that Nolan discovered the error when he went to the clerk's office to lodge the papers for record, and embraced that opportunity to examine the record of the missing mortgage. And this he would naturally do, for he was aware, undoubtedly, of the non-production of the older mortgage by Smith when he attempted to assign it to Sperry. And then, having discovered this error, he declined to use the smaller check until a new assignment was prepared and executed. This being done on the morning of the 5th of June, that second assignment was executed and recorded, and the Brock note paid and stamped accordingly. It is well to note in this connection that the stamp used by the bank in marking notes and checks "paid" is changed every morning, and it seems quite impossible to account for the smaller check bearing the stamp of June 5th while the larger check bears the stamp of June 4th, on the supposition that they were both paid on the same day.

Here, then, is evidence tending to show that the clerk, Nolan, discovered that the mortgage which was the subject of the assignment was executed by Longley, and that it contained the clause describing the notes accurately, adding, "which notes were given for a part of the purchase price for said goods and chattels," and the same expression occurs in the affidavit of Mr. Smith in that mortgage, and that this information was probably received by Nolan at the moment of the delivery of the chattel mortgage and the larger check to Brock. This was in ample time for him to have halted the transaction, either by withholding the check from Brock or stopping its payment at the bank.

For all these reasons I come to the conclusion that Sperry had notice of such facts and circumstances as clearly to put him on inquiry as to Longley's interest in these chattels, and the case must be considered on that basis.

But Sperry, in his affidavit prepared for use on the motion for injunction, states that he first commenced foreclosure proceedings on the $500 mortgage, and shortly after also proceeded under the mortgage direct from Brock to him, and that shortly after that, ascertaining that the mortgage given by Brock was fatally defective, he had abandoned proceedings under that and had fallen back on his assignment of the smaller mortgage. But it is proper to say that in his answer he claims under both instruments.

We come now to the situation of the complainant, Longley, and inquire whether he is chargeable with notice that the older mortgage had been assigned to anybody.

And in the first place, it was brought to him by his co-mortgagor, Brock, with the seals torn off and with the note which it was given to secure stamped "paid" by the bank. Now, it seems to me that such production of the mortgage and the note was the very best evidence that the whole had been actually paid and discharged.

The case might have been different if the note had not been produced stamped "paid" by the bank. In this respect the case is in marked contrast with the famous case of *Harrison* v. *Johnson, 18 N. J. Eq. (3 C. E. Gr.) 420; S. C.,* on appeal, *Harrison* v. *New Jersey Railroad and Transportation Co., 19 N. J. Eq. (4 C. E. Gr.) 488,* where the mortgage was produced without the bond which it secured, or any proof of its payment, and under circumstances which the court thought put the party relying upon its cancellation upon inquiry. The rule is there stated with great clearness, and acted upon, that if the debt is paid the mortgage is gone as a lien.

In the case on appeal (at *p. 500*) Chief-Justice Beasley uses this language: "For it is clear, I think, that the exhibition of the mortgage did not show that the debt secured by it was paid. On the contrary, it evinced that there was a bond outstanding which was the legitimate evidence of such indebtedness. The

mortgage is the mere adjunct of the bond, which is the obligation manifesting the debt, and which, wherever it may reside, draws its adjunct to it. It is common knowledge that when the bond is assigned it carries in equity the mortgage security with it, and the consequence is that the mortgage is often in one hand and the equitable right in the other."

It follows in this case that the assignment of the mortgage, without the transfer of the note unpaid with it, amounted to nothing. Nor can I perceive that the fact that the note and mortgage were presented by Brock to Longley, the one with the seals torn off and the other marked "paid," two months before their maturity ought to have put Longley on any inquiry or excitable suspicion that they had been stolen. My reason is that the exhibition of these papers was accompanied by a proposition to buy Longley out, and Longley may well have supposed that Brock had prepared himself to deal with him by first paying the note on which Longley was endorser. And here it may be well to mention that if anybody was in fault in permitting Brock to be in possession of the mortgage it was Smith, for, as we have seen, he knew that his mail was being handled by Brock, and yet it never occurred to him that Brock might have been tempted to get possession of the mortgage. And Sperry, taking title from Smith, not only was put on inquiry as to the actual possession of the mortgage, but he took it, so to speak, subject to whatever negligence Smith had been guilty of up to the date of the assignment.

But, be all that as it may, there can be no doubt that Sperry, through his attorney, is responsible for the note coming to the hands of Brock, who was thereby enabled to practice the fraud.

But counsel for Sperry rely on the eighth section of the Chattel Mortgage act of 1902 (*P. L. 1902 p. 487*), which provides that chattel mortgages duly recorded shall be valid against the creditors of the mortgagors, and against subsequent purchasers and mortgagees, from the time of the recording thereof until the same be *canceled of record.*

That section is a repetition of section 9 of the Chattel Mortgage act of 1885 (*Gen. Stat. p. 2114*), and the object of its insertion in the original act, as is well known, was to change the

old law, which provided that chattel mortgages must be filed and refiled, or in some way renewed, every year. Besides, it is quite impossible to suppose that the legislature meant to validate a mortgage that had been actually paid. And this view is strengthened when we observe that the language used is "creditors, subsequent purchasers and mortgagees," omitting the words "in good faith," which are found in section 4 of the revision and the corresponding section in the original statute. That this is the correct exposition of this section of the statute was held in *Meding* v. *Roe, 53 N. J. Eq. (8 Dick.) 350* (at *p. 358,* near the bottom).

But the counsel for the defendant relies upon the fact that there was an assignment of the mortgage on record before Longley dealt with Brock on the strength of his possession of these securities, and that Longley is chargeable with notice of that assignment.

The complainant's counsel makes two answers to this. In the first place, that the possession under the circumstances of those securities, especially the note, was a dispensation to Longley of any duty on his part to examine the records. He knew that his own note, secured by the mortgage, was paid. His co-mortgagor brings him the other note stamped "paid," accompanied with the mortgage, and the question is, Why should he look further on the records? I am unable to understand on what principle he could be called upon to inquire any farther. And on this subject much of what was said by Justice Knapp, in *Heyder* v. *Excelsior Building and Loan Association, 42 N. J. Eq. (15 Stew.) 403* (at *p. 407*), speaking for the court of errors and appeals, applies. The opinion of Advisory Master Williams in that case, and the opinion of Master Wilson in *Harrison* v. *Johnson, supra,* contain all the authorities up to that date.

The other answer made by counsel for Longley to the argument of the counsel for Sperry, based on the assignment, is this —that neither of those assignments as recorded were entitled to record because not acknowledged according to the laws of New Jersey, in that the certificates of acknowledgment do not contain the statement that the contents were made known to the party acknowledging the execution, and hence their record is

not constructive notice. Their examination verifies that contention, and it remains to be determined what effect must be given to it. The chattel mortgage revision of 1902, in its sixth section, provides that no chattel mortgage shall be recorded until its execution

"shall be first acknowledged or proved and such acknowledgment or proof certified thereon in the manner prescribed by the act respecting conveyances."

That "Act Respecting Conveyances" is found in *P. L. 1898 p. 670 et seq.,* and the twenty-first section provides what deeds and instruments may be acknowledged and recorded, among which are "chattel mortgages, assignments, releases and discharges thereof." The twenty-second section provides how these instruments shall be acknowledged and the acknowledgment certified. After enumerating certain officers to take acknowledgments, it proceeds as follows:

"Such officer having first made known the contents thereof to such party making such acknowledgment, and being also satisfied that such party is the grantor in such deed or instrument, of all which the officer shall make his certificate on, under or annexed to said deed or instrument."

These certificates here in question fail in both these respects. Then the fifty-third section provides

"that any deed, &c., which shall have been duly executed, acknowledged or proved and certified as aforesaid, and shall have been duly recorded, &c., such record shall be notice to all subsequent judgment creditors, purchasers and mortgagees of the execution of said deed or instrument and the contents thereof."

The original act providing for the assignment of mortgages of real estate (*Gen. Stat. p. 2108*) provided that where a mortgage of lands is assigned and the assignment recorded, such record shall be notice to all persons concerned that said mortgage is so assigned; and further, that if the assignment is not recorded, payments made to the assignor in good faith, and without notice of the assignment and releases of mortgaged

premises, shall be valid in the absence of actual notice. It will be observed that the language above quoted from sections 53 and 54 of that act respecting conveyances (1898) do not, strictly speaking, apply to the case in hand; and further, the Chattel Mortgage act of 1902, respecting chattel mortgages, contains no clauses such as I have quoted relating to assignments of land mortgages.

But granting that the sections from the act respecting conveyances are broad enough to apply to the present case, we are then met with the old question whether an instrument, deed, mortgage or contract, not properly proved or acknowledged, but nevertheless recorded, is constructive notice binding on a party who has no actual notice because he thinks it not worth while to examine the public record.

My examination of that subject leads me to the conclusion that the great weight of authority and reason is that such record is not constructive notice. I shall not take time or space to cite the authorities. They are largely gone into by Mr. Wade in his treatise on the *Law of Notice,* and in the various treatises on mortgages. *Jones Chat. M.* §§ *247, 248.* In the American notes to *LeNeve* v. *LeNeve, 2 White & T. Lead. Cas. (4th Am. ed.,* from the *4th Lond. ed.) 206,* the doctrine is thus stated:

"So a purchaser need not take notice of an instrument which does not appear to have been proved or acknowledged in accordance with the statute,"

citing a large number of cases.

Counsel for Sperry falls back upon the well-settled rule that a mortgage that has been paid may be kept alive, notwithstanding such payment, to secure another creditor of the mortgagor, or may be appropriated to other purposes than that for which it was originally executed and kept alive as against subsequent parties, encumbrancers, or purchasers. The doctrine is a familiar one, but has no application here, where the attempt was made to keep it alive by only one of the mortgagors, and that one having only a one-third interest in the chattels mortgaged, and that one-third interest subject to the superior lien of his co-mort-

gagor and co-owner for any balance due to him on a settlement of the partnership affairs.

Further, in order to uphold the mortgage under such circumstances, the parties to the novation or new delivery of the mortgage must be careful not to do or omit anything which may lead a subsequent purchaser or encumbrancer to the just belief that the mortgage has been discharged. Here the parties to the attempted assignment of the mortgage permitted the leading document, the promissory note which it was given to secure, to come to the hands of the mortgagor with evidence on its face that it had been paid, and not only that, but did not secure possession of the mortgage itself.

Upon this, the most important part of the case, I conclude that Sperry's case fails, and that he can claim no relief under the old mortgage.

We come now to the larger mortgage from Brock to Sperry, given to secure the whole $2,250. The joint ownership of the property having been established beyond all peradventure, the question is, What effect has that mortgage, or what effect could it have had if it had been properly and lawfully executed? The answer is plain that, as in favor of any person having notice of the joint ownership and *quasi* partnership, its only effect was to convey to the mortgagee the equitable interest which Brock had in the chattels covered by it after the affairs of the partnership were wound up and the actual amount coming to Brock ascertained. In other words, Sperry obtained the right, and no more, to have the partnership wound up in an orderly manner, and to receive the part coming to Brock. Longley had the superior right, as a partner, to enforce his general lien upon the partnership assets to secure anything that might be due from Sperry to the partnership upon a winding up.

But counsel for Sperry puts himself upon the proposition that each partner has the power to sell and dispose of the partnership property.

It is familiar law that the power of one partner over the property of the partnership is that of an agent, and is confined to the scope of the partnership business. It would be absurd to

hold that one partner in the business of keeping a livery stable would have the implied right, from the mere fact that he was keeping a livery stable, to sell out the whole plant and give a good title to it without the knowledge and consent of his partner, and the same consideration applies to the mortgaging of it.

The general rule is stated with approximate accuracy by Vice-Chancellor Reed, in *Carr* v. *Hertz, 54 N. J. Eq. (9 Dick.) 127* (at *p. 131*), a case cited by counsel for Sperry in his argument. What was said by the learned vice-chancellor must be read in connection with the facts of the case, which was an attack upon certain mortgages given by one partner to creditors of the firm for the purpose of preferring such creditors against other creditors of the firm, and those mortgages were set aside by the vice-chancellor, and his decree was affirmed (at *p. 700*).

Turning to the present case, it does not necessarily appear that it was a part of the business of Longley and Brock to buy and sell horses as dealers. But, presumably, had Brock sold a horse and carriage apparently in the ordinary course of business he would have passed a good title. That, however, is quite a different matter from executing a chattel mortgage on the whole and appropriating the proceeds to his own use. This point, taken by counsel for Sperry, in my judgment, completely fails.

His next point is that although there is what in law amounts to no affidavit at all annexed to the mortgage, still, as it was properly acknowledged and recorded, the complainant being merely a subsequent purchaser of Sperry's one-third interest, and not a creditor, the mortgage is not invalid as against him because he has had constructive notice of it through the public record.

There is undoubtedly a decided difference in the standing of creditors and subsequent purchasers under the statute here in question, as was pointed out in the opinion of this court in *Roe* v. *Meding, 53 N. J. Eq. (8 Dick.) 350,* and the cases there cited, and counsel relies on the case of *Boice* v. *Conover, 54 N. J. Eq. (9 Dick.) 531*. But that was not a case where the prior mortgage was attacked for want of any affidavit made according to the statute, or that the affidavit which was properly made by

one of the mortgagees was absolutely untrue, but the attack was made on the ground that the affidavit was misleading, and the consideration therein stated was false in that it treated a mere endorsement by the mortgagee as an indebtedness constituting part of the consideration, and that the remainder of the consideration was a debt due by one of the mortgagors only. For that reason it was held to be an improper and unlawful attempt to prefer creditors, and fraudulent and void as to creditors.

But as to Mrs. Boice it was held good because her mortgage, though subsequent in execution, was given by the same mortgagors, and she had full notice of the prior mortgage, and was therefore not a *"bona fide* purchaser," but must content herself with taking whatever interest the mortgagors had when they executed their mortgage.

The notice to Mrs. Boice of the prior mortgage was an actual notice, hence the question still remains whether the record in this case became, in the absence of any actual notice to Longley, constructive notice which binds him.

The mortgage to Sperry was properly acknowledged. The certificate declares that the contents were made known to Brock, &c. In fact, the mortgage was a New Jersey form with a New Jersey form of certificate. Hence it was entitled to record, and is not within the category of the two assignments of the older mortgage, whose acknowledgments were defective, and it only remains to inquire whether, under our statute, it is constructive notice. I have already cited a part of the twenty-first section of the act respecting conveyances of 1898, which shows that chattel mortgages are entitled to be recorded. By the fifty-third section, if properly acknowledged and recorded, all such

"instruments shall be thereafter notice to all subsequent judgment creditors, purchasers and mortgagees of the execution of said deed or instrument and of the contents thereof."

This statute is peremptory, and in effect declares that the record of the Sperry mortgage was notice to Longley of the existence of the mortgage and its contents.

Counsel for Longley, having his attention called to this aspect

of the case, argues that in the case of *Boice* v. *Conover, supra,* Mrs. Boice had actual notice of the former mortgage, and he attempts to distinguish between actual notice and the constructive notice resulting from registry. The language of the act as to the effect of registry is explicit—"shall be notice"—and I am unable to distinguish between actual notice and constructive notice due to the statute. No authority was produced by counsel to sustain his argument in that respect, and in my judgment, to sustain the distinction as claimed would have the effect of destroying the whole of the Registry act in the matter of notice.

The result, then, to which I have come is this—that Longley's mortgage is the first lien on the two-thirds interest in the chattels, and also that Longley has a partner's lien on the other one-third for any amount which, upon taking the account, it may be found that Brock has reduced his proportionate share in the property, if any, by overdraft. The evidence does not show how the amount for which Longley sold his interest to Brock was arrived at, and probably the absence of Brock from the state will render the taking of the account very difficult, and perhaps the books have not been kept in such a manner as to render it possible under any circumstances.

Be that as it may, unless the parties can agree upon a partition of the funds upon a basis of two-thirds to one-third, or some other basis, an account must be taken. I will settle the decree upon notice. The question of costs is reserved.