H. GARD KNOX, complainant-respondent,

*v.*

FLOYD M. KAELBER and DOROTHY LIVIA WAUGH KAELBER, his wife, HACKENSACK TRUST COMPANY, executor of Margaret A. Jaeger, deceased, and CORNELIA B. WILLIAMSON, defendants, and LEUMAN M. WAUGH, defendant-appellant.

[Argued May 26th, 1947. Decided September 25th, 1947.]

*Messrs. Weber & Muth (Mr. John J. Breslin, Jr., and Mr. James A. Major, of counsel), for the appellant.*

*Messrs. Seufert & Elmore (Mr. J. Laurens Elmore and Mr. Charles Fishberg, of counsel), for the respondent.*

The opinion of the court was delivered by

HEHER, J.

The decree is affirmed, and generally for the reasons expressed in the opinion of the learned Vice-Chancellor with respect to the point raised by this appeal as to whether appellant is estopped from enforcing the record lien of his mortgage as to the lands sold to respondent by oral agreement and from executing the judgment recorded in the attachment suit against the defendants Kaelber.

The essence of appellant's argument is that he did not, "by word or deed," mislead respondent as to the existence of the mortgage, and therefore the doctrine of estoppel *in pais* has no application. It is said that there was no act done or position assumed by him that cannot be repudiated without working injustice to respondent, and so raise an equity in the latter's favor superior to the liens of the recorded mortgage and the judgment in attachment.

But the proofs are conclusive that appellant was fully informed of Dr. Kaelber's negotiations with respondent for the sale of the lands in question, as the transaction progressed, and that he knowingly, and in his own interest, suffered and permitted respondent to enter into an agreement with Kaelber for the purchase of the plot for approximately $11,000 and to erect thereon a dwelling house at a cost in excess of $29,000, as well as to pay the land purchase price to Kaelber, all the while under the mistaken belief, induced by Kaelber with appellant's knowledge and consent, that the land was unencumbered and title would be conveyed to him in due course free and clear of liens. Indeed, we are quite convinced that appellant considered himself the owner of the lands and in reality conducted the negotiations with respondent through Kaelber as his representative.

The parcel which respondent agreed to buy consisted of a little more than 26 acres; the whole tract comprised 230 acres. The title to the entire area was vested, not in Kaelber, but in appellant's daughter, Kaelber's wife. Appellant advanced the full consideration price when the purchase was consummated and title conveyed; and the mortgage was taken ostensibly as security therefor. Appellant thereafter paid all the taxes on the lands; and there were no payments of interest on the mortgage. Appellant and the Kaelbers were in straitened financial circumstances at the time; and it is frankly conceded that they were anxious to sell a larger portion of the lands in order to improve their economic situation.

Appellant admitted that respondent's interest in the lands eased his mind. He made inquiry and learned respondent had the means for a large investment in the tract. Appellant had pledged the mortgage as security for his note of between $35,000 and $40,000, held by a New York bank. He said: "I had to have money for the reduction of that mortgage or my bank was going to sell me out. That has been on my mind for ten years, and is to-day." He continued: "My investment was considered tremendous, and my bank was constantly after me and is today." The negotiations with respondent began in the Fall of 1935. And the Kaelbers, appellant said, were then "in drastic circumstances." When the time came for delivery of the deed, pressure was brought to bear upon respondent to purchase from 75 to 100 acres at a cost of between $16,000 and $20,000. When this demand was rejected, delivery of a deed for the parcel purchased, free from the lien of the mortgage, was refused. As to this appellant testified: "My first question [to Dr. Kaelber] on coming home from Alaska was: 'Has Mr. Knox paid you any money? I need it very bad. The bank has been troubling me while I was away. Have you received any money?' He said, 'We cannot come to an agreement.' I said, 'You have never given me any basis for an agreement. What is there?' He said, 'I wrote Mr. Knox this letter in June.' That letter is in evidence. It says that Mr. Knox was to buy from 75 to 100 acres of land for from 16 to 20 thousand dollars. I told

him that was the basis, if consummated, on which I would be willing to release that property to Mr. Knox; for that amount of money." And appellant admitted giving this direction to Kaelber in the Fall of 1935, when respondent became interested in the site: "And I told Dr. Kaelber to bring me something definite; until he brought me something definite in writing, I could not say whether I would be willing to accept it, or not."

.The meaning of all this is not open to doubt. Dr. Kaelber was appellant's agent in the negotiations with respondent. And when respondent refused to purchase the larger plot, appellant and Kaelber conspired to coerce his acquiesence in the wrongful demand by refusing performance of the agreement made, with appellant's full knowledge and approval, for the sale of the smaller parcel free of encumbrance, and on the faith of which respondent, with appellant cognizant of the plan to build without a conveyance and of the work as it progressed, had made the costly improvement adverted to. It goes without saying that in these circumstances an equitable estoppel arose in favor of respondent, as respects both the mortgage and the judgment.

Appellant remained silent when in reason and conscience he should have spoken; and this silence was deliberate and purposeful. There was error on the one side and fraud on the other. The holder of a mortgage on land may be estopped to assert the priority of his lien against a subsequent purchaser or encumbrancer by any act, conduct or omission of his own which would render it unconscionable to enforce the security to the other's prejudice. One cannot, in equity and good conscience, deny that which his fraud or culpable silence had led another to believe existed, if the latter has acted on the belief to his injury. Where the circumstances warrant, equity will give a party the benefit of an honest supposition as to title even though an examination of the record or other available source of information would have revealed the error. And it is not necessary that there be a willful design to mislead. *Erie Railroad Co.* v. *Delaware, Lackawanna and Western Railroad Co.*, *21 N. J. Eq. 283; Dellett* v. *Kemble, 23 N. J. Eq. 58; Sumner* v. *Seaton, 47 N. J. Eq. 103; Todd*

v. *Exeter Land Co., 104 N. J. Eq. 431.* See, also, *41 C. J. 593.* Equity charges the conscience of the culpable person with his failure of duty; and, by the principle of estoppel, it enforces the correlative right and equity in favor of him to whom the duty of revelation was owing.

The policy of the recording act is to charge all persons subsequently interested or concerned in the land with notice of the recorded transaction, actual or constructive; and the statutory priority is effectual unless there is clear and convincing proof of an overriding equity. The evidence here satisfies that standard. Appellant is estopped by his acts and conduct from asserting his mortgage against respondent. The contrary holding would be repugnant to the plainest principles of equity and justice.

Affirmed.

*For affirmance*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, COLIE, EASTWOOD, BURLING, WELLS, DILL, FREUND, McLEAN, JJ. 11.

*For reversal*—WACHENFELD, J. 1.

*For modification*—McGEEHAN, J. 1.