148 N.J. Super. 159 (1977)
372 A.2d 356
NEW JERSEY BANK, (NATIONAL ASSOCIATION), A CORPORATION OF THE UNITED STATES OF AMERICA, PLAINTIFF-APPELLANT,
v.
AZCO REALTY CO., INC., A NEW JERSEY CORPORATION, NATIONAL COMMUNITY BANK, A BANKING ASSOCIATION OF THE UNITED STATES OF AMERICA AND STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 28, 1977.
Decided March 15, 1977.
*162 Before Judges BISCHOFF, MORGAN and KING.
Mr. Allan A. Maki attorney for appellant.
Messrs. Fasolo and Krause attorneys for respondent National Community Bank (Mr. William A. Fasolo, of counsel and Mr. Bruce H. Dexter on the brief).
*163 The opinion of the court was delivered by KING, J.S.C., Temporarily Assigned.
Plaintiff New Jersey Bank (NJB) appeals a final judgment following a nonjury trial in the Chancery Division awarding priority in a foreclosure action against Azco Realty to a later recorded mortgage executed by National Community Bank (NCB). We reverse.
The essential facts are undisputed. On July 16, 1973 NJB lent Azco $67,000. This loan was secured by a mortgage on premises in Paramus, but the mortgage was not recorded until over a year later, on Friday, July 19, 1974. On July 20, 1967 Azco had executed a purchase money mortgage on the same premises to NCB to secure a loan of $30,000 and this mortgage was recorded one day later. In July 1974, when the balance due on the NCB mortgage was $21,175.08, NCB and Azco negotiated a new mortgage loan in the amount of $65,000. This note and mortgage were executed by Azco at the closing which took place on Monday, July 22, 1974. The preliminary report of title and subsequent bring-down revealed no encumbrances or liens on the premises except for NCB's prior 1967 purchase money mortgage. At the time of the closing the balance due on the 1967 mortgage was disbursed to NCB from the settlement proceeds. The subsequent NCB mortgage was recorded on July 25, 1974. Testimony at the trial indicated that indices are not available in the Bergen County Clerk's office for two business days after recording and there is no daily registry of documents received for recording. NCB stated they could not, with the exercise of diligence and caution, have had actual notice of this prior recording before their own settlement on July 22, 1974. NCB raised several other defenses to plaintiff's assertion of priority, i.e., a defective acknowledgment of the NJB mortgage, an insufficient property description, lack of authority to execute the mortgage, estoppel and unclean hands.
N.J.S.A. 46:21-1 states any instrument which is duly acknowledged and then recorded or "lodged for record" *164 with the county recording officer is from that time notice to all subsequent judgment creditors, purchasers and mortgagees. Plaintiff was under no obligation to file within a given time after execution, make further inquiry regarding other claims to the real estate, or have their instrument listed in the county indices in order to receive priority. It is sufficient that the document be deposited for recording a the clerk's office and remain in the clerk's office until it is actually transcribed. Knickerbocker Trust Co. v. Penn Cordage Co., 66 N.J. Eq. 305, 312 (E. & A. 1904), see also, Von Schuller v. Commercial Investment Bl. & L. Ass'n, 63 N.J. Eq. 388, 390 (Ch. Div. 1902). N.J.S.A. 46:22-1 provides no redress if a party is the first to lend money but the second to record, but makes his instrument void against subsequent secured creditors without notice who record first. Here plaintiff recorded first and therefore receives priority under the statutes, whether or not defendant was aware of that recording.
The Recording Act requires that an instrument be properly acknowledged or proved before it is entitled to be recorded. N.J.S.A. 46:15-1. If an instrument is inadvertently recorded with a defective acknowledgment or proof, that recording does not serve as constructive notice to a subsequent purchaser or encumbrancer. Longley v. Sperry, 72 N.J. Eq. 537, 548-50 (Ch. 1907); Brinton v. Scull, 55 N.J. Eq. 747, 756 (Ch. 1897). The trial judge held the acknowledgment on the face of the mortgage was defective because it listed New Jersey Bank as the mortgagor instead of Azco in three separate places. We agree with this factual determination. The officer before whom the instrument is acknowledged must at least be "satisfied" that the party executing the same is the grantor in the instrument. N.J.S.A. 46:14-6. If the notary had merely read the acknowledgment and verified that the parties were those identified in the mortgage on the same piece of paper, she could not have been "satisfied" within the plain language of the *165 statute. This is the most elementary duty imposed on a notary under that statute.
The trial judge also found the separate corporate acknowledgment defective. This acknowledgment was located on the reverse side of the mortgage. On this separate corporate acknowledgment the name of Azco's president, Zakula, is set forth in the space provided for the secretary to acknowledge the corporate seal, and "Azco" is designated as the president. The trial judge also found on the proofs presented to him that at the time the mortgage was executed there was no corporate resolution in existence authorizing Zakula to execute a mortgage on behalf of Azco, and according to the records on file in the office of the Secretary of State, Zakula was not the president of Azco at the time the mortgage was executed and delivered to NJB.
N.J.S.A. 46:14-2 requires only that an officer of the corporation acknowledge before the notary that the instrument sealed with the corporate seal is the voluntary act and deed of the corporation, made by virtue of authority from the applicable party. These compulsory requirements appear to have been complied with on the face of the acknowledgment, and the statute does not declare that any more is required to effectuate a valid acknowledgment. Although customary practice may dictate that the secretary of a corporation verify the seal used in the instrument, N.J.S.A. 46:14-2 allows any corporate officer to acknowledge this fact. Thus, the only error on the face of the document is the insertion of the corporate name when the name of their president is appropriate. Zakula had already acknowledged his position once in the certificate, so this can only be considered a scrivener's error. In certifying the acknowledgment, substantial compliance with the requirements of the statute is sufficient, and literal conformity is unnecessary. Torrey v. Thayer, 37 N.J.L. 339 (Sup. Ct. 1875). We hold this corporate acknowledgment to be in compliance with N.J.S.A. 46:14-2 and the recording *166 of the mortgage therefore effected constructive notice to subsequent purchasers or encumbrancers.
While the description of the property given in the NJB mortgage was not in the form of metes and bounds, unopposed expert testimony at the trial indicated the description given was sufficient to identify it as the premises in question. We agree with the trial judge's finding that the description in the mortgage was adequate for purposes of identifying the property and recording the mortgage.
The defendant finally raises as defensive matter the doctrine of unclean hands. Foreclosure is an equitable remedy governed by the operation of traditional equitable principles and is subject to the defense of unclean hands. Taylor v. Mitchell, 90 N.J. Super. 312, 320 (Ch. Div. 1966). Defendants claimed that NJB was negligent in the preparation and execution of its mortgage papers and was guilty of an unexplained and inexcusable tardiness in enforcing its rights by the delayed recording of the mortgage. The trial judge found that "considering the totality of the circumstances surrounding this transaction and plaintiff's inability or unwillingness to offer any explanation whatsoever concerning it, * * * plaintiff's conduct estops it from asserting the priority of its mortgage over that of NCB." New Jersey case law requires NCB to come forward with more than a lack of evidence explaining plaintiff's delay and peculiar timing to overcome the Recording Act. See Taylor v. Mitchell, supra (involving illegality); Knox v. Kaelber, 140 N.J. Eq. 598 (E. & A. 1947) (involving fraud plus culpable silence), and Vreeland v. Dawson, 55 N.J. Super. 456 (Ch. Div. 1959), where the court denied a resulting trust because defendant had stood ready, willing and able to pay at all times.
Public policy requires that the Recording Act should be strictly construed:
An historical study of the Act, as well as an analysis of the cases interpreting it, leads to the conclusion that it was designed to compel the recording of instruments affecting title, for the ultimate purpose *167 of permitting purchasers to rely upon the record title and to purchase and hold title to lands within this state with confidence. The means by which the compulsion to record is accomplished is by favoring a recording purchaser, both by empowering him to divest a former nonrecording title owner and by preventing a subsequent purchaser from divesting him of title. This ability to deprive a prior and bona fide purchaser for value of his property shows a genuine favoritism toward a recording purchaser. It is a clear mandate that the recording purchaser be given every consideration permitted by the law, including all favorable presumptions of law and fact. It is likewise a clear expression that a purchaser be able to rely upon the record title. [Jones, "The New Jersey Recording Act  A Study of its Policy," 12 Rutgers L. Rev., 328, 329-330 (1958).]
Here, plaintiff's mortgage was clearly of record prior to defendant's. Good practice and common sense require that no disbursement should be made on a mortgage until there is a bring-down search showing a recording of the instant mortgage with no intervening equities. The Recording Act requires no less. Deficiencies in procedures in the county clerk's office which prevent discovery of documents "lodged for record" should not deprive a validly lodged security instrument of its priority. Defendant is entitled to a priority only to the extent of the unpaid portion of their earlier recorded mortgage, $21,175.08. Cliffside Park v. Progressive Theatres, 122 N.J. Eq. 109 (Ch. 1937), Camden Cty. Welfare Bd. v. Federal Deposit Insur. Co., 1 N.J. Super. 532 (Ch. Div. 1948).
The judgment is reversed with a direction that judgment be entered establishing the priority of the mortgage of NJB to the extent determined by this opinion.
Reversed.