**In re David BUCHHOLZ, Debtor.**

**Bankruptcy No. 90–35482.**

United States Bankruptcy Court,
D. New Jersey.

Aug. 3, 1998.

---

Carol L. Knowlton, Teich, Groh and Frost, Trenton, NJ, Walter Wronka, Walter Wronka, P.C., Belle Mead, NJ, for Debtor.

Bari Gambacorta, Farr, Burke, Gambacorta & Wright, Bellmawr, NJ, for Empire Mortgage Corp.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### PROCEDURAL BACKGROUND

This matter comes before the court as a motion by debtor, David Buchholz ("debtor"), to expunge the secured claim of creditor Empire Mortgage Corp. ("Empire"). Debtor contests the underlying validity of a mortgage held by Empire, alleging procedural and substantive deficiencies surrounding the transaction. Empire counters that the transactions surrounding the debt were proper and valid, and that debtor is bound by principles of collateral estoppel, entire controversy doctrine, and by his confirmed reorganization plan pursuant to 11 U.S.C. § 1227(a). Empire also argues that debtor is prohibited from modifying the claim pursuant to 11 U.S.C. § 1229(b)(1).

This court heard the matter on August 13, 1997 and reserved decision. The court permitted the parties to file post-trial briefs. Empire submitted its brief on September 8, 1997; debtor filed its post-trial brief on August 13, 1997. Debtor submitted additional letters to the court concerning procedural objections to the materials filed by Empire. After reviewing the materials submitted by the parties and considering the legal arguments set forth in the post-trial briefs, this court found it necessary to reopen the record on January 13, 1998. The court requested that the parties address the effects of confirmation of the chapter 12 plan on the ability of the debtor to contest the underlying validity of Empire's debt. A conference was held in chambers on January 21, 1998 concerning those confirmation issues. Additional materials were submitted by the debtor to the court on February 10, 1998.

This court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. §§ 157(b)(2)(A), (B), (L) and (O).

### FACTS

Debtor, David Buchholz, borrowed $200,-000 from Empire's predecessor-in-interest, Hunterdon National Bank ("Hunterdon"), on September 21, 1987 and executed mortgages on a forty-five acre farm and a twenty acre parcel of undeveloped property located at lots 6 and 10, block 21, Alexandria Township, Hunterdon County, New Jersey (the "properties") which were recorded October 14, 1987.

Prior to such loan, Debtor had established a long-term relationship with Hunterdon, which was in existence at the time a certain Mr. Benner became president of the institution. The relationship continued with the new president and Debtor met regularly with him. Transactions between the debtor and the bank were approved directly by Mr. Benner with little or no consultation with other lending officers. No evidence was adduced at trial that Mr. Buchholz was recognizable or generally known to any other officer or employee of the bank.

Pursuant to this personal relationship, debtor sought and obtained a line of credit from Hunterdon for purposes of consolidating debtor's personal credit card debt, eliminating a United States Internal Revenue Service ("IRS") claim against Mr. Buchholz personally for $60,000 of corporate taxes owing from corporations in which he held ownership interests, to purchase property in Pennsylvania where he intended to move his residence and business, and to enable him to make a contribution to the capital of his business, a nursery. Hunterdon approved a line of credit of up to $200,000 to be secured by a lien upon debtor's residence and adjacent property. Some of the tracts subject to Hunterdon's lien were then under contracts for sale.

Anticipated proceeds from the sale of these properties were earmarked toward the satisfaction of debtor's outstanding obligation with Hunterdon. Upon approval of the line of credit, debtor immediately took advantage of the funds made available, withdrawing the full $200,000 on September 27, 1987. At the time of the loan, Mr. Benner directed the debtor to another bank officer, Mr. Brown, in order to document the loan in accordance with state law. Debtor testified, without contradiction, that he had never met Mr. Brown before, and that he was unknown to Mr. Brown.

In so consummating the loan, the bank officer, Mr. Brown, documented the loan as a

series of business loans. Mr. Brown failed to provide debtor with any disclosures, or afford Mr. Buchholz with any notice of his right to rescind or provide him with plain language documentation. He also failed to provide the debtor with a certified true copy of the mortgage. Of most importance, this court finds that Mr. Brown took the signed mortgage to be acknowledged by a staff notary, Francis Hagan, outside the presence of the debtor. This testimony was corroborated by a sworn affidavit executed by Ms. Carol Kucheruck, the secretary to Mr. Brown who prepared the mortgage. Under oath, she swore that she specifically recalled the mortgage and the day that the mortgage was executed. She recalled that Mr. Buchholz met with Mr. Brown to sign the mortgage and that Mr. Hagan was not present. She also recalled that sometime later, Mr. Hagan was presented with the mortgage without the debtor being present.

During trial, Mr. Hagan was questioned at length concerning his acknowledgment of the debtor's signature on the mortgage. The officer failed to testify affirmatively to this court, nor did he provide other evidence that the document was signed in his presence. Mr. Hagan could not state that he was of such familiarity with the debtor and his handwriting at the time of the acknowledgment, that he could recognize the handwriting on the mortgage.

Significantly, Mr. Hagan testified that it was common practice at the bank to notarize documents outside the presence of the signer. During the testimony, after observance of the demeanor and credibility of the witness, it appeared to this court, that the witness displayed a cavalier attitude toward the duties charged him as a notary public in insuring that documents are properly and accurately acknowledged. It further appeared that it was the culture of the bank, and this individual to execute acknowledgments regularly in this slip-shod manner.

Despite the fact that the acknowledgment was not taken in the presence of the debtor, nor effectuated by a notary familiar with the debtor's signature, it is not in dispute that the signature verified by the acknowledgment was indeed the signature of David Buchholz. Thereafter, Hunterdon recorded the mortgage in the office of the County Clerk of Hunterdon County on October 14, 1987.

The debtor's financial distress began to mount when the various parties contracted to purchase the properties, reneged on their obligations. As a result of their breaches, debtor was unable to liquidate the debt owed to Hunterdon. In July of 1988, Hunterdon unilaterally altered the loan transaction by requiring debtor to execute additional documents, including a new business note. Again, Hunterdon failed to provide debtor with any required disclosures or notices.

Despite debtor's continued effort to market the properties, he was unable to do so, resulting in a default on the loan. This prompted Empire to commence foreclosure proceedings in the Superior Court of New Jersey, Hunterdon County, on January 8, 1990, Case No. F–00254–90. The proceeding was sent to the Chancery Division as a contested matter. Debtor defended the action by raising an affirmative defense in his answer that he was not liable on either the note or the mortgage. On August 17, 1990, the Chancery Judge, Hon. Wilfred P. Diana, entered an order striking debtor's answer and transferring the foreclosure action to the Office of Foreclosure and the proceeding on the note to the Law Division. The August 17, 1990 order also states, in paragraph 4, that the record failed to demonstrate whether the loan was solely for business purposes. Accordingly, the order ruled, any action for damages had to await a determination of the amount recovered on the property. On November 9, 1990, an application by Hunterdon for reasonable attorneys fees and costs was granted in the amount of $15,188.35.[1] That

---

1. Empire asserts in its brief that it was awarded over $150,000 in attorney's fees and costs against the debtor, however, an examination of the order reveals that Empire grossly overstated the award, which was only $15,188.35. In addition, Empire asserts that fees were awarded because the pre-

siding judge found debtor's position to be egregiously frivolous and completely without merit. No such assertion is contained or referenced, in either the order striking the answer, or the order awarding fees. The orders also do not state that they are "with prejudice" thereby reducing the

order awarding fees was entered by the state court on December 6, 1990.

Thereafter, before entry of any final judgment by either the Office of Foreclosure on the foreclosure causes of action, or by the Law Division on the action on the note, debtor filed a petition for relief pursuant to Chapter 12 ("Chapter 12") of Title 11 of the United States Code (the "Bankruptcy Code") on December 5, 1990. As a result, the state foreclosure action was held in abeyance. As of the date the petition was filed, debtor owed Hunterdon $286,499.99 in principal and interest. Hunterdon did not obtain relief from the automatic stay; thus as a consequence, the foreclosure action remains frozen.

In response to debtor's petition, on July 22, 1991, Hunterdon moved to dismiss the case for, *inter alia*, debtor's failure to file a timely plan of reorganization pursuant to 11 U.S.C. § 1221. A little over a week after Hunterdon filed its motion to dismiss, on August 1, 1991, debtor filed its original Chapter 12 reorganization plan. As a result of this filing, Hunterdon withdrew its motion to dismiss on August 26, 1991. In October 1991, Hunterdon changed its name to Highland Community Bank ("Highland").

On March 20, 1992, debtor filed a modified plan of reorganization. Highland objected to this plan on April 3, 1992. Confirmation hearings were held in July and August 1992. On August 4, 1992, this court specifically took up Highland's motion to dismiss the case, and its objections to confirmation. At this hearing, Highland argued that the debtor had filed the Modified Plan in an untimely fashion and that Highland had been prejudiced by this delay. This court rejected this argument, finding that any delay was occasioned by Highland's failure to pursue its motion to dismiss the original plan with appropriate diligence; and that, in any event, the delay was substantially justified and not violative of 11 U.S.C. § 1221.

Highland also argued that the Modified Plan was not feasible in that the debtor would be unable to refinance the mortgages on Block 21, Lots 6 and 10 (the "properties"). The court rejected this argument as well, finding the debtor had a reasonable likelihood of selling a minimum the two five acre parcels of lot 6, and found testimony relating to debtor's plan to refinance lot 10 to be both credible and uncontroverted. During colloquy with the court, debtor pointed out that he contested the underlying validity of Highland's claim. Debtor further requested that if the court were to fix an amount in the plan, that it also make clear that debtor's right to contest the claim by way of formal motion to expunge, was preserved.

In granting its approval, the court attempted to accommodate the interests of all parties. The court added provisions to the Modified Plan requiring the sale at public auction of the properties if they remained unsold after three years, and that Highland be paid $24,000 annually to cover interest on the debtor's outstanding debt. Also, in the order confirming the Modified Plan, this court specifically preserved the debtor's right to challenge the validity of the secured status of Highland's claim. Paragraph 7(a) of the August 13, 1992 confirmation order states that the "Court will retain jurisdiction for the following purposes: (a) Determination of the allowability of claims upon objection to such claims by the Debtor–In–Possession or by any other party in interest."

On September 25, 1992, Highland Community Bank was seized by the Comptroller of Currency, and the Federal Deposit Insurance Corporation ("FDIC") took control of its assets as receiver.

Highland appealed both the order denying Highland's motion to dismiss and the order confirming the Modified Plan to the United States District Court for the District of New Jersey. On July 17, 1993, the District Court

opportunity for the debtor to file a new answer. Thus it is unclear whether the orders were entered on an uncontested basis, or based upon a technical default, such as in discovery, or based upon more substantive grounds. Absent any evidence to the contrary, this court is unwilling to read findings that the debtor's position lacks

merit, into an unambiguous and clearly worded order. It is also noteworthy that the order was apparently prepared by Empire's counsel. Accordingly, if such a finding was made, it can be inferred that Empire would have included it in the proposed order.

affirmed both decisions of the bankruptcy court. Subsequent to the District Court's affirmance, Empire became successor to the interests of the FDIC. Thereafter, on June 27, 1996, an appeal from the District Court decision was denied. No appeal was taken to the U.S. Supreme Court; accordingly, the order confirming the modified plan had been fully adjudicated.

Within one week after the full adjudication of the order confirming the Modified Plan, the debtor directed his attention to the provision in the confirmation order preserving his right to contest the validity of Empire's underlying lien. Accordingly, on July 3, 1996, debtor filed this motion to expunge Empire's claim.

To date, Empire has been paid $113,117.39 by the debtor. Of this amount, $89,400.46 has been transferred to Empire during the course of this bankruptcy proceeding. With the sole exception of Empire, all other creditors have been paid in full and the Modified Plan is nearly complete.

## DISCUSSION

Debtor seeks to disallow the claim of Empire as secured pursuant to 11 U.S.C. § 502(b)(1). Debtor argues that the claim of Empire is unsecured because it was defective under both Federal and New Jersey State law. Debtor asserts that certain federal procedural guidelines concerning disclosures and notices to be provided at the time of closing (*See Federal Truth-in-Lending Act,* 15 U.S.C. § 1601, *et seq.*) ("TILA") were not followed. In addition, debtor contends that the acknowledgment of the mortgage was defective, as it was not executed in the presence of a notary. Accordingly, debtor states, Empire violated the New Jersey Recording Statutes, N.J.S.A. 46:14–1 *et seq.,* N.J.S.A. 46:15–2, and the lien was never perfected. Furthermore, the curative statute, N.J.S.A. 46:21–2, does not operate to validate the instrument, as the filing of the bankruptcy petition intervened and established the rights of the parties on the petition date which

occurred before completion of the curative time period.

Empire asserts that the TILA is not applicable to debtor's loan, as it was issued primarily for business, commercial and/or agricultural purposes. Accordingly, any procedures mandated by TILA, but not followed in this case, do not affect the validity of the loan. As to the validity of the acknowledgment, Empire contends that debtor has not met its burden of clear and convincing evidence that the acknowledgment was improperly executed. Finally, Empire argues that the debtor is estopped from contesting the validity of the mortgage based upon principles of the entire controversy doctrine on points which debtor did not raise in the state court proceeding, and on the grounds of collateral estoppel for defenses which were struck in the state court answer. In a pre-trial brief, Empire also argued that debtor is bound by the order confirming the plan, and that the anti-modification provisions of 11 U.S.C. § 1229 prevent debtor from contesting the lien.

### Allowance of Claims

The power of the bankruptcy court to disallow claims is well established. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 59, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) ("it is clear, however, by submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims …)" (*Id.*) 11 U.S.C. § 502 which provides the court with authority to disallow claims, states in pertinent part:

§ 502. **Allowance of claims or interests.**

(a) A claim or interest … is deemed allowed, unless a party in interests … objects.

(b) Except as provided in subsection (e)(2), (f), (g), (h) and (i) [2] of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim … as of the date of the filing of the petition, and allow such claim in such amount, except to the extent that—

---

**2.** 11 U.S.C. § 502(e)(2), (f), (g), (h) and (i) are not applicable here, as they deal with contribution or reimbursement (502(e)(2)), involuntary petitions

(502(f)), lease rejection (502(g)), recovery of property (502(h)), or priority taxes (502(i)).

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

11 U.S.C. § 502(b)(1).

The burden of proof for the allowance or disallowance of claims rests on different parties at different times. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir.1992). A properly filed and supported proof of claim is deemed "prima facie valid." *Id.* Thereafter, the burden shifts to the party objecting to the claim. In such case, the objector must "produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Id.*

■ In this case, the debtor filed affidavits from various bank officers or employees, casting doubt on the validity of the acknowledgment contained in Empire's mortgage. In addition, debtor filed a memorandum of law articulating the legal basis for its position that Empire's lien is unsecured. Finally, this court heard testimony at a hearing on the motion to avoid the lien from the notary, which testimony corroborated the facts as asserted by debtor. Accordingly, this court finds that the debtor produced evidence which would refute at least one of the allegations that is essential to the claim's legal sufficiency. Thus the burden shifts to Empire to prove the validity of its claim by a preponderance of the evidence.

In deciding whether or not a claim should be allowed, the plain language of the statute[3] makes clear that the court must determine the amount of the claim as of the date of the filing of the bankruptcy petition. *See* 11 U.S.C. § 502(b); Volume 3 Collier on Bankruptcy, 15th Edition at paragraph 502.02, page 502–24; *In re Hance*, 181 B.R. 184, 185 (Bankr.M.D.Pa.1993); *See also, U.S. v. Ron Pair Enterprises*, 489 U.S. 235, 241, 109 S.Ct.

1026, 103 L.Ed.2d 290 (1989) ("[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Id.); Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) (It is a fundamental canon of statutory construction that words chosen by Congress in drafting a statute should generally be interpreted according to their "ordinary, contemporary, common meaning." *Id.*).

■ While allowance or disallowance of a claim is a matter of federal law "left to the bankruptcy court's exercise of equitable powers," the validity of the underlying debt is generally controlled by state substantive law. *In re Shelter Enterprises*, 98 B.R. 224, 229 (Bankr.W.D.Pa.1989), *amended on reconsideration on non-substantive grounds*, 99 B.R. 668 (Bankr.W.D.Pa.1989); *Matter of Ford (First City Beaumont v. Durkay)*, 967 F.2d 1047, 1049–50 (5th Cir.1992), *rehearing denied*, 974 F.2d 1337 (5th Cir.1992) (same); *In re Johnson (Canal Corp. v. Finnman)*, 960 F.2d 396, 404 (4th Cir.1992) (same).

■■ In this case, the objection to the underlying debt concerns the validity of a security interest in real property. Property interests in bankruptcy proceedings are determined by the law of the state in which the real property is located. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law." *Id.*). Accordingly, the substantive law of the State of New Jersey will apply to a determination of whether Empire's mortgage was secured as of the date the petition was filed.

### Effect of the Defective Acknowledgment

Debtor asserts that Empire's mortgage is unsecured as it was improperly acknowledged. Thus, argues debtor, it was never perfected under New Jersey state law. *See* N.J.S.A. 46:14–1 *et seq.*; N.J.S.A. 46:15–2. The debtor further argues that the New Jersey curative statute, N.J.S.A. 46:21–2, did not operate to cure the defect as the rights of

---

**3.** "The court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States *as of the date of the* *filing of the petition.*" 11 U.S.C. § 502(b) (emphasis added).

the parties were fixed as of the petition date. In the alternative, the debtor asserts that the trustee's status as a *bona fide* purchaser for value pursuant to 11 U.S.C. § 544(a)(3), also prevents the defective lien from being remedied by the curative statute. Accordingly, debtor continues, the claim is not secured and should be disallowed.

Under New Jersey law, a mortgage instrument first must be duly acknowledged or proved and certified at the time the loan transaction is consummated. N.J.S.A. 46:14–1 *et seq.*; N.J.S.A. 46:15–2; N.J.S.A. 46:16–1.[4] Otherwise the instrument may not be recorded with the relevant county recording office. *Id.* Likewise, if the acknowledgment is defective, the mortgage may not be recorded or registered in the appropriate county office unless the creditor cures the defect by obtaining and filing an endorsed statement by the mortgagor declaring that the mortgagors received a certified true copy of the instrument and mortgagee or mortgagee's attorney provided mortgagor with a certified true copy of the instrument. N.J.S.A. 46:15–12.

■■■ The New Jersey Recording Statutes, in effect at the time the mortgage was executed, required that the maker personally appear before an authorized officer and execute and acknowledge the instrument in the officer's presence in order for the acknowledgment to be valid. N.J.S.A. 46:14–6; N.J.S.A. 46:15–1; N.J.S.A. 46:16–1. Courts interpreting the recording statutes have held that the test for determining the validity of an acknowledgment of a mortgage instrument is based upon the degree of familiarity that the officer taking the acknowledgment has with the party signing the document. *Smiley v. Hanna,* 94 N.J.Eq. 573, 581–82, 120 A. 793 (Ch.1923). Before a designated officer may affirm that the signature to be acknowledged is, in fact, the signature of the

party named in the instrument, the officer first must be satisfied, within his own conscience, that the party making it is the identical person named in, and who executed, the instrument. *Id.* Generally, that requirement is met when the maker of an instrument personally appears before the notary to acknowledge the instrument and the notary has knowledge of the identity of the affiant. N.J.S.A. 46:14–6. However, on occasion, when the acknowledgment is taken outside of the presence of the notary, the requirement may be met if the officer is sufficiently familiar with the signature of the party executing the document. *Hanna,* 94 N.J.Eq. at 582, 120 A. 793.

■■■ In order for the rights of a creditor, who has recorded its mortgage, to prevail over certain other competing interests in real property, the security interest must be perfected. *Partridge v. Mechanics' Nat'l Bank of Burlington,* 77 N.J.Eq. 208, 212, 77 A. 410 (Ch.1910), *aff'd,* 78 N.J.Eq. 297, 81 A. 1134 (Ch.1911) (Where mortgage is not proved according to law, it is not recorded according to law and not entitled to record. Therefore, it is not constructive notice and the rights of other competing interests are unaffected by the conveyance. *Id.*) A recorded mortgage which contains an acknowledgment which is invalid, is in violation of the New Jersey recording statutes. *See* N.J.S.A. 46:14–1, *et seq.* Accordingly, the lien is not perfected until the mortgage is properly acknowledged (or cured). *Id. See also Brinton v. Scull,* 55 N.J.Eq. 747, 756, 35 A. 843 (Ch. 1897) (without proper acknowledgment there is no authority to record the instrument and record of the transaction is wholly ineffective. *Id.*). While such recording requirements may seem overly formalistic, New Jersey case law, *New Jersey Bank v. Azco Realty Co., Inc.,* 148 N.J.Super. 159, 372 A.2d 356 (App. Div.1977), nevertheless instructs this court

---

**4.** These sections were repealed in 1991 by L.1991, C. 308, § 6, effective June 1, 1992. The prior recording statutes and cases interpreting those statutes, however, are applicable to documents executed prior to the repeal. *Law Revision Committee Comments R. 46:14–1* ( "[T]he commission is aware that this provision [the repealed statute] may be relevant in assessing the validity of old documents ... Many old princi-

ples of law are necessary in the interpretation of old documents."). In any event, even if the new recording statute was applicable, the new recording statute, 46:14–2.1, still requires the execution of an acknowledgment in the presence of a notary. In addition, under the new statute, N.J.S.A. 46:15–1.1, an acknowledgment is still a prerequisite to the recording of a mortgage.

**22**

that the Recording Act should be strictly construed:

> An historical study of the Act, as well as an analysis of the cases interpreting it, leads to the conclusion that it was designed to compel the recording of instruments affecting title, for the ultimate purpose of permitting purchasers to rely upon the record title and to purchase and hold title to lands within this state with confidence. The means by which the compulsion to record is accomplished is by favoring a recording purchaser, both by empowering him to divest a former nonrecording title owner and by preventing a subsequent purchaser from divesting him of title. This ability to deprive a prior and bona fide purchaser for value of his property shows a genuine favoritism toward a recording purchaser. It is a clear mandate that the recording purchaser be given every consideration permitted by the law, including all favorable presumptions of law and fact. It is likewise a clear expression that a purchaser be able to rely upon the record title.

148 N.J.Super. 159, 166, 372 A.2d 356.[5]

■ Accordingly, a mortgage which has been inadvertently recorded with a defective acknowledgment does not serve as notice to a subsequent purchaser or encumbrancer and does not provide constructive notice of the security interest. *Brinton v. Scull*, 55 N.J.Eq. 747, 756, 35 A. 843 (Ch.1897); *Longley v. Sperry*, 72 N.J.Eq. 537, 66 A. 1062 (Ch.1907); *New Jersey Bank v. Azco Realty Co., Inc.*, 148 N.J.Super. 159, 163, 372 A.2d 356 (App.Div.1977).

■ In this case, the court finds that the mortgage was not executed in the presence of a notary public. After observing the demeanor and credibility of the witnesses, in particular Mr. Hagan, the notary public, this court found, as a matter of fact, that the bank officer was routinely in the habit of taking acknowledgments outside the presence of the signer. This court also finds that Mr. Buchholz signed the document in the presence of Mr. Brown, who, in turn, walked the document to Mr. Hagan. Furthermore, this court finds that Mr. Hagan was unfamiliar with Mr. Buchholz and was also unfamiliar with the debtor's signature. The notary, thus lacked the familiarity necessary to overcome the acknowledgment of the instrument outside of his presence. Accordingly, the acknowledgment failed to comply with the New Jersey recording statute, N.J.S.A. 46:14–6; N.J.S.A. 46:15–1; N.J.S.A. 46:–16–1, and is invalid. Therefore, the mortgage lien did not provide notice or constructive notice and failed to perfect Empire's security interest.

■ Furthermore, the New Jersey curative statute does not operate to cure the defect in the recording of Empire's mortgage. As stated *supra*, this court is charged with determining the status of Empire's lien *as of the date of the filing of the petition. See* 11 U.S.C. 502(b)(1).[6] The petition was

---

5. *See also Law Revision Commission Comment to N.J.S.A. 46:15–1.1, Prerequisites to recordation* ("Over the years, there have been many suggestions that the requirement of acknowledgment be abolished.... While the Commission is recommending some changes in the acknowledgment requirement, it is not recommending abolition of acknowledgment or proof of execution as a prerequisite to recordation. The requirement is continued ...")

6. Empire argues that 11 U.S.C. § 546(b) somehow acts as a statute of limitations, barring recovery under 11 U.S.C. § 502(b)(1). 11 U.S.C. § 546(b) bars the commencement of a proceeding brought under the trustee's strong-arm powers under 11 U.S.C. § 544, *et al.* This is a proceeding under section 502(b)(1) which determines the allowability of the claim as of the date of the filing of the bankruptcy petition. Accordingly, the court did not have to rely on the power

of the trustee as a *bona fide purchaser* to determine whether the claim was secured. As of the date of the petition, it was unsecured solely under principles of state law.

Even if the court did have to rely on the status of the trustee as a *bona fide* purchaser, to arrive at the conclusion that the claim was unsecured, section 546(b) would still not be a bar to recovery for two reasons. First, the motion to disallow would be brought under 11 U.S.C. § 502(d), which is not subject to the 546(b) time limitations. *See In re McLean Indus., Inc.*, 184 B.R. 10 (Bankr.S.D.N.Y.1995) (majority view is that motion under section 502(d) is timely, even though time to bring a section 544 action has expired.) (citing *In re KF Dairies*, 143 B.R. 734, 736 (9th Cir. BAP 1992); *In re Stoecker*, 143 B.R. 118 (Bankr.N.D.Ill.1992); *In re Chase & Sanborn Corp.*, 124 B.R. 368, 370 (Bankr.S.D.Fla.1991); *In re Minichello*, 120 B.R. 17 (Bankr.M.D.Pa. 1990); *In re Eye Contact, Inc.*, 97 B.R. 990

filed on December 5, 1990. The defective mortgage was recorded on October 14, 1987. Pursuant to the New Jersey curative statute, N.J.S.A. 46:21-2, "any deed or instrument ... of record for *six or more years*, shall become valid for purpose of notice ... notwithstanding the ... defect, imperfection or uncertainty in, the acknowledgment ..." N.J.S.A. 46:21-2 (emphasis added). Here, the mortgage was of record for only three years as of the date of the filing of the petition; accordingly, the recording statute did not cure the defect.

Empire argues that a *prima facie* case for the validity of its acknowledgment is established where the acknowledgment meets all of the statutory requirements. *Marsh v. Mitchell*, 26 N.J.Eq. 497, 499 (1975). Thus, Empire asserts, the debtor must overcome this presumption of validity with clear, satisfactory and convincing evidence. *Potter v. Steer*, 95 N.J.Eq. 102, 104, 122 A. 685 (1923). In addition, Empire argues, mere evidence that the officer who took the acknowledgment cannot recollect doing so is insufficient to overcome the presumption of validity. *Tooker v. Sloan*, 30 N.J.Eq. 394, 399 (1879). Similarly, debtor's mere inability to remember executing the instrument fails to prevail over the *prima facie* case of validity. *Oppenheim v. Oppenheim*, 91 N.J.Eq. 160, 114 A. 419 (1919). Therefore, Empire concludes, debtor has failed to prove that the acknowledgment was improperly executed, and overcome the presumption of its validity.

Empire's argument fails, however, because this court has indeed found that the debtor overcame the presumption of the validity of the acknowledgment. As indicated above, this court found, based upon the testimony of the witnesses, and particularly, the demeanor and credibility of Mr. Hagan, that the mortgage was not executed in the notary's presence. Furthermore, the court found that debtor executed the document in the

presence of Mr. Brown, who was unfamiliar with the debtor and had never met him before. Mr. Brown, in turn, following formal or informal bank procedure, walked the document to the notary for acknowledgment. Accordingly, this court finds that the debtor has provided sufficient, clear, and convincing evidence, that establishes more than mere inability to recall the transaction, but an affirmative rebuttal of the presumption of validity.

Empire also argues that the recording statutes under which *Longley v. Sperry*, 72 N.J.Eq. 537, 66 A. 1062 (1907) was decided, have been repealed. Accordingly, the *Longley* case is inapposite. Empire cites no law for the proposition that *Longley v. Sperry* is no longer good law. (*See* Footnote 4, *supra*). However, Empire references, in support of its position, the New Jersey curative statute, N.J.S.A. 46:21-2. As addressed above, the curative statute does not operate in this case to correct the defective acknowledgment.[7]

In conclusion, this court finds that Empire's claim is unsecured as of the date the petition was filed, as the mortgage was defectively acknowledged and failed to perfect Empire's security interest. Thus, the debt is unsecured under applicable New Jersey state law. Accordingly, Empire's claim is disallowed pursuant to 11 U.S.C. § 502(b)(1) as a secured claim. This is not to say, however, that the debtor's obligation to pay Empire is eliminated under state law. *See e.g., Moore v. Riddle*, 82 N.J.Eq. 197, 203, 87 A. 227 (Ch.1913) (acknowledgment is not essential to the validity of an instrument as between the parties to it.) Rather, the claim is unsecured. Accordingly, the reorganization plan must be modified to calculate the amount to which Empire is entitled as a member of the unsecured class.

(Bankr.W.D.Wis.1989); *In re Larsen*, 80 B.R. 784 (Bankr.E.D.Va.1987); *In re Tesmetges*, 87 B.R. 263 (Bankr.E.D.N.Y.1988), *aff'd*, 95 B.R. 19 (E.D.N.Y.1988); *In re Mid Atlantic Fund, Inc.*, 60 B.R. 604 (Bankr.S.D.N.Y.1986)).

Second, the plain language of section 546 only bars the bringing of an action under section 544,

it does not terminate the *status* of a trustee as a *bona fide* purchaser.

7. Since the court finds that the mortgage is defective under principles of state law, it need not address whether the transaction also violated TILA. (*Federal Truth-in-Lending Act*, 15 U.S.C. § 1601, *et seq.*)

### Principles of Collateral Estoppel and Entire Controversy Doctrine

Empire asserts that the bankruptcy court may not decide the validity of the mortgage under principles of collateral estoppel because those issues were already decided in the State Court proceeding when Judge Diana entered orders striking debtor's answer and awarding fees.

■■ Collateral estoppel principles apply in bankruptcy proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Brown (First Jersey National Bank v. Brown)*, 951 F.2d 564, 571 (3d Cir.1991). Under the full faith and credit statute, 28 U.S.C. § 1738, the preclusive effect of a state court judgment in a subsequent proceeding under federal bankruptcy law is governed by the collateral estoppel law of the state from which the judgment is taken. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *In re Brown*, 951 F.2d at 568–69.

The New Jersey Supreme Court has recently set forth the standards in determining the applicability of collateral estoppel:

> For the doctrine of collateral estoppel to apply to foreclose the litigation of an issue, the party asserting the bar must show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding ... (2) the issue was actually litigated in the prior proceeding ... [ (]"the litigant against whom issue preclusion is invoked must have had a full and fair opportunity to litigate the issue in the previous tribunal") ... (3) the court in the prior proceeding issued a final judgment on the merits ... (4) the determination of the issue was essential to the prior judgment ... (collateral estoppel applies ... "those [m]atters and [f]acts necessary to support the judgment rendered in the prior action") ... and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Matter of Estate of Dawson*, 136 N.J. 1, 20–21, 641 A.2d 1026 (1994).

■ This court finds that collateral estoppel does not apply in this case, as at least two of the five prongs of the *Dawson* test are not met. First, the case was not actually litigated. According to the proofs submitted by Empire, the case was in its infancy. The debtor's answer was stricken and the matter was severed and sent in part to the Office of Foreclosure (foreclosure action) and in part to the Law Division (action on the note). No findings of fact were made in the order striking the answer or the order awarding fees. In fact, the order striking the answer, indicated that there were unresolved factual matters, such as whether or not the loan was solely for business purposes. In addition, no hearings were held concerning the merits, nor was evidence produced. It is also unclear whether any discovery was completed.

While Empire makes assertions that Judge Diana found that the debtor's case lacked merit and was frivolous, no such findings appeared in any of the submitted orders. Rather than entering judgment in favor of Empire, Judge Diana severed the action and transferred it as detailed above. Debtor correctly points out that the effect of transferring the matter to the Office of Foreclosure as uncontested was not an adjudication on the merits pursuant to New Jersey Superior Court Rules 4:64–1(b) and 1:34–6. Rather, those rules make clear that further judicial hearings and notice are required before entry of any judgment. Of particular importance, the rules mandate notice to defendants whose answers have been stricken or rendered noncontesting. *R. 46–64–1*. In addition, any order which had been entered by the Office of Foreclosure is only a recommendation subject to approval by a Superior Court Judge. *R. 1:34–6*.

Thus it seems clear to this court that the matter was not actually litigated. Furthermore, there has been no law cited to this court that debtor would not have had an opportunity to submit a new answer and have his position tried on the merits. To the contrary, the notice requirements of R.4:64–1 indicate that even when a defendant has had its answer stricken, and the matter has been forwarded to the Office of Foreclosure as

uncontested, that the defendant has an opportunity to be heard.

For the reasons stated above, this court also finds that the collateral estoppel requirement that there be a final judgment on the merits entered in the prior case likewise was not met. Empire quotes from a prior case issued by this court, *In re 865 Centennial Ave. Assocs., Ltd., Partnership*, 200 B.R. 800, 814 (Bankr.D.N.J.1996), in which this court discussed the issue of finality of judgments. In particular, this court found that the concept of finality was more "pliant" in the context of collateral estoppel than in claim preclusion. *Id.*

Empire's reliance on that discussion is misplaced, however, in the context of this case. In *865 Centennial*, the discussion of finality presupposed the entry of a final judgment on the merits, and the effect of subsequent appeals of that judgment. *Id.* at 812. Quoting from *In re Brown*, 951 F.2d at 569, this court found that "the doctrine of collateral estoppel applies whenever an action is sufficiently firm to be accorded conclusive effect." *Id.* at 812–13. In *865 Centennial*, there had been a ten week trial, entry of final judgment on the merits, objections to determination of amount due and numerous motions for reconsideration. In this case, there has not even been the entry of a judgment *on the merits*, which is final. As stated above, neither Judge Diana nor the Office of Foreclosure nor the Law Division made findings of fact, or ruled on the issue of foreclosure, the note, liability or amount due.

### Entire Controversy Doctrine

Empire also claims that debtor may not raise issues concerning the validity of the mortgage which it could have raised in the state court proceeding, based upon the entire controversy doctrine.

■■■ The entire controversy doctrine requires the raising in the first proceeding of all affirmative claims that a party might have against another party, including counterclaims and cross-claims as well as joinder of all parties with a material interest in the controversy (i.e. those who can effect or be effected by the judicial outcome of the controversy). *Circle Chevrolet v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 289, 662 A.2d 509 (1995). At the time of the original action, if the claim was known had arisen or accrued, the doctrine bars the claim. *Id.* at 290, 662 A.2d 509. Application of the rule is discretionary and best decided on a case-by-case basis. *Id.*

■■■ A threshold requirement for dismissal of a cause of action based upon the entire controversy doctrine is that the controversy in the first proceeding has been adjudicated. *See Cogdell v. Hospital Center at Orange*, 116 N.J. 7, 15, 560 A.2d 1169 (1989) ("The entire controversy doctrine embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court.") This requirement addresses the purpose of the entire controversy which is to bar *re-litigation* of a matter. Where a matter has not been litigated the doctrine does not apply.

■■■ As indicated above, in this case, the proceeding was in its infancy and there was no adjudication in the State Court proceeding. Accordingly, the entire controversy doctrine does not apply to this action. In addition, it has not been shown that debtor would be precluded from filing a new answer if the state court proceeding were to recommence, which would in fact, assert the appropriate causes of action.

### Post–Confirmation Issues

■■■ In a pre-trial memorandum, Empire raised the issue that debtor is bound by his confirmed reorganization plan pursuant to 11 U.S.C. § 1227(a), and prohibited from modifying the claim pursuant to 11 U.S.C. § 1229(b)(1).[8] At the status conference, counsel for debtor argued that it is not prohibited from contesting the claim by the plan pursuant to 11 U.S.C. § 1227(a), because the order confirming the plan specifically pre-

---

8. Empire did not pursue this argument after trial in its post-trial brief. This court invited the parties to submit additional argument on this point, and held a status conference after trial

concerning such confirmation issues. Empire did not submit additional materials, nor did it press the argument any further. Nonetheless, this court will briefly address the issue here.

served the right to move to expunge claims. Furthermore, the order confirming the plan followed colloquy with the court at the confirmation hearing, in which Empire specifically contested the validity of Empire's claim. In addition, debtor argues that 11 U.S.C. § 1227(a) does not apply to this motion to expunge, as the contesting of the underlying validity of a claim is not a modification subject to the proscriptions of that subsection.

11 U.S.C. § 1227 states that, "[t]he provisions of a confirmed plan bind the debtor and each creditor ..." 11 U.S.C. § 1227. Section 1229(a), however, allows modification of a confirmed plan "upon request of the debtor, the trustee, or the holder of an allowed unsecured claim ..." under certain conditions. 11 U.S.C. § 1229(a). The binding effect of confirmation may be reconciled with modification under section 1229, as § 1229 merely sets the parameters of modification after confirmation, while § 1227(a) is a statutory description of the effect of a confirmed or modified confirmed plan.

While Empire is correct that a plan does bind the parties pursuant to § 1227, that section does not apply to this case, as the plan contemplates and specifically permits the post-confirmation objection to claims. Since all parties in interest were on notice of the confirmation hearing, as well, any party who attended or reviewed the transcripts of the confirmation hearing, would be on notice that the underlying validity of Empire's claim was contested.

As to post-confirmation modification, there is a distinction between the modification of a plan, and determination of allowance of allowed claims pursuant to 11 U.S.C. § 502(b). This court found no authority, nor was any cited, standing for the proposition that a court may not disallow a claim after confirmation of a plan. To the contrary, as held by the Third Circuit, in *In re Lewis*, 875 F.2d 53 (3d Cir.1989), where a determination of allowed claims is not necessary to finding whether or not the proposed plan meets confirmation prerequisites, confirmation is not the appropriate deadline for objection to the claim. *Id.* at 57. (Deciding issue in context of motion brought under 11 U.S.C. § 506(d) seven months after confirmation to avoid a mortgage lien which was dealt with in the reorganization plan.)

In the instant case, there is nothing to suggest that determining the status and priority of Empire's claim is necessary to a finding of whether debtor's plan met the technical standards necessary for confirmation. The plan submitted by debtor would have met confirmation standards whether Empire's claim was scheduled as a properly perfected secured claim or listed as an unsecured obligation of the estate. Therefore, confirmation of debtor's plan presents no barrier to debtor's present objection to the status of the mortgage.

This court recognizes the value of finality in determining the rights and duties of the various parties as set forth in a reorganization plan. This court is also sensitive to the length and delay in conclusion of this case. Such equitable considerations, however, should control only where the interests and rights of the parties are misaligned. In this case, Empire's aggressive litigation tactics (amounting to numerous motions to dismiss, objections to confirmation, and appeals of orders of this court) have contributed to the delay. In fact, Empire's appeals up to and including the Third Circuit Court of Appeals, tied up debtor's 1992 confirmation order for four years, until 1996 when Empire's appeal was dismissed. Within a week after entry of that order, which marked the full adjudication of whether the plan would be confirmed and the case dismissed, debtor commenced this motion to disallow Empire's claim. Any prior trial on the motion to disallow may have been subject to challenge as premature, since the dismissal of the case was on appeal. Accordingly, debtor was correct to await disposition of the appeal by the Third Circuit.

## CONCLUSION

For all of the above reasons, this court finds that the motion to disallow Empire's claim as secured pursuant to 11 U.S.C. § 502(b)(1) is granted. Empire's claim is reclassified as unsecured, and the reorganization plan shall be modified to treat the claim accordingly. Counsel for debtor shall submit

an appropriate form of order within ten (10) days.